United States District Court
Southern District of Texas
**ENTERED**
July 12, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| J.G., by and through his<br>next friend, JANIE GUAJARDO,[1] | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-340 |
| | § | |
| BRYAN INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[2] are Defendant's Motion for Summary Judgment (Doc. 19) and Defendant's Supplemental Motion for Summary Judgment (Doc. 40). The court has considered the motions, the responses, all related briefing, the summary judgment evidence and the objections thereto, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's Supplemental Motion for Summary Judgment be **GRANTED**. Because that motion was more comprehensive than Defendant's original motion and fully supplanted it,[3] the court **RECOMMENDS that** Defendant's Motion for

---

[1]    Plaintiff filed this action under the surname "Guajardo" but submitted a declaration under the name "Janie Garcia." Compare Doc. 1, Pl.'s Orig. Compl. with Doc. 47-1, Ex. A to Not. of Filing Exs. A-C Omitted from Pl.'s Opposed Late Resps., Decl. of Pl.

[2]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 16, Ord. Dated May 18, 2018.

[3]    In addition to the arguments raised again in Defendant's supplemental motion, the original motion contained arguments in favor of summary judgment based on deemed admissions. That portion was mooted by the court's granting of Plaintiff's motion to set aside the deemed admissions.

Summary Judgment be **DENIED AS MOOT.**[4]

## I.  Case Background

Plaintiff Janie Guajardo, on behalf of her son J.G, who had been diagnosed with Autism, Ehlers-Danlos Syndrome, and a speech impairment, filed this civil rights action against Defendant, the school district at which J.G. was a student in 2015-2016, when he was "a victim of bullying, assault, and sexual assault perpetrated by his peers and older school children."[5]

### A. **Procedural Background**

Plaintiff's complaint, filed on February 6, 2018, alleged:

> During his time at Ben Milam Elementary, J.G. was called a "little rat," smacked on the head, touched on his face, mouth and buttocks [by two other students], and arrived home with bite marks and stains on his underwear.  These incidents took place in classrooms and bathrooms at Ben Milam Elementary.  As incidents of these abuses continued, J.G. began to show behavioral changes, including aversion to using the restroom, aversion to closing the door to the restroom, and begging not to go back to school each morning.  [Defendant] knew about many of these incidents, as J.G.'s mother complained to school staff and the Bryan Police Department regarding her concerns.[6]

Plaintiff further alleged that the family's complaints were never investigated and that Defendant, "[d]espite being aware of the incidents of sexual abuse and the resulting behavioral changes

---

[4]     Although the court finds Defendant's Motion for Summary Judgment to be moot, the court has considered the evidence submitted with that motion and Plaintiff's response to that motion.

[5]     Doc. 1, Pl.'s Orig. Compl. p. 1.

[6]     Id. pp. 1-2.

displayed by J.G., [Defendant] still failed to appropriately address these concerns."[7]

Plaintiff asserted that Defendant violated Title IX of the Educational Amendments of 1972[8] ("Title IX"), Title II of the Americans with Disabilities Act[9] ("ADA"), and Section 504 of the Rehabilitation Act[10] ("Section 504").[11]  Plaintiff articulated a Title IX claim based on Defendant's deprivation of J.G.'s educational opportunities as a result of the alleged peer-on-peer harassment, an ADA claim based on Defendant's refusal to provide J.G. with a non-hostile educational environment, and a Section 504 claim based on Defendant's failure and refusal to provide J.G. with a non-hostile educational environment.[12]

Plaintiff also asserted a claim pursuant to the ADA based on Defendant's refusal to reasonably accommodate J.G.'s disabilities in that it did not provide him with certain services such as an assessment of his "unique and individualized needs[,]" a psychological assessment, school-based counseling, an aide to observe him at school, and training on social skills particularly

---

[7]     Id. p. 2.

[8]     See 20 U.S.C. § 1681.

[9]     See 42 U.S.C. §§ 12131-12134.

[10]    See 29 U.S.C. § 794.

[11]    See Doc. 1, Pl.'s Orig. Compl. pp. 11-13.

[12]    See id.

in reference to handling bullying or harassment.[13]

On March 5, 2018, Defendant answered the complaint and, on September 17, 2018, filed a motion for summary judgment.[14] Defendant's motion was based in part on deemed admissions resulting from Plaintiff's failure to timely respond to Defendant's requests for admissions.[15]   As of the date of the motion, Plaintiff's responses to Defendant's requests were more than thirty days late.[16] Defendant also argued that Plaintiff could not satisfy all of the elements of a claim pursuant to Title IX, ADA, or Section 504.[17]

Twenty-two days after Defendant filed its motion, Plaintiff filed an unopposed motion for additional time to respond to Defendant's motion due to having recently overcome an illness.[18] The court granted the motion.[19]   On October 16, 2018, the date on which Plaintiff's response was due pursuant to the court's extension, Plaintiff filed a motion to set aside the deemed admissions due to Plaintiff's counsel's hospitalization and mistake

---

[13]     Id. p. 8.

[14]     See Doc. 6, Def.'s Ans.; Doc. 19, Def.'s Mot. for Summ. J.

[15]     See Doc. 19, Def.'s Mot. for Summ. J. pp. 1, 4-9.  Plaintiff also failed to respond to Defendant's interrogatories and requests for production. See id. pp. 1, 4-5.

[16]     See Doc. 19, Def.'s Mot. for Summ. J. pp. 1, 4-5.

[17]     See id. pp. 9-17.

[18]     See Doc. 20, Pl.'s Unopposed Mot. for Extension of Time to Respond to Def.'s Mot. for Summ. J.

[19]     See Doc. 21, Ord. Dated Oct. 10, 2018.

4

and filed a motion to extend the deadline for the response to Defendant's motion for summary judgment until after the court ruled on the motion to set aside the deemed admissions.[20]  Defendant opposed both motions and promptly filed responses.[21]

The court set a hearing for November 5, 2018, for the purpose of hearing arguments on Plaintiff's motions to set aside deemed admissions and to extend the time to respond to the pending summary judgment motion.[22]  On November 2, 2018, in advance of the hearing, Plaintiff filed a second motion for leave to file a late response to Defendant's summary judgment motion and filed her response to that motion.[23]  Attached to Plaintiff's response was an appendix that included regulations, guidelines, and policies.[24]  Plaintiff also submitted the declarations of Plaintiff and J.G.'s father, Guadalupe Guajardo ("Guadalupe").[25]  The court held the hearing as

---

[20]    See Doc. 22, Pl.'s Opposed Mot. for Extension of Time to Respond to Def.'s Mot. for Summ. J.; Doc. 24, Pl.'s Opposed Mot. to Undeem & Set Aside Deemed Admissions.

[21]    See Doc. 22, Pl.'s Opposed Mot. for Extension of Time to Respond to Def.'s Mot. for Summ. J. p. 4; Doc. 24, Pl.'s Opposed Mot. to Undeem & Set Aside Deemed Admissions p. 8; Doc. 27, Def.'s Resp. to Pl.'s Opposed Mot. for Extension of Time to Respond to Def.'s Mot. for Summ. J.; Doc. 28, Def.'s Resp. to Pl.'s Opposed Mot. to Undeem & Set Aside Deemed Admissions.

[22]    See Doc. 29, Not. of Setting.

[23]    See Doc. 30, Pl.'s Opposed Mot. for Leave to File a Late Resp.; Doc. 31, Pl.'s Opposed Late Resp. to Def.'s Mot. for Summ. J.

[24]    See Doc. 31-2, Attach. 1 to Pl.'s Opposed Late Resp. to Def.'s Mot. for Summ. J., App'x.

[25]    See Doc. 31-3, Attach. 2 to Pl.'s Opposed Late Resp. to Def.'s Mot. for Summ. J., Decl. of Pl.; Doc. 31-4, Attach. 2 to Pl.'s Opposed Late Resp. to Def.'s Mot. for Summ. J., Decl. of Guadalupe.

scheduled and granted both of the motions filed by Plaintiff.[26]

On November 7, 2018, Defendant filed an unopposed motion for leave to supplement its motion for summary judgment, which the court granted.[27] On February 1, 2019, Defendant timely filed its supplemental motion, in which it omitted the argument based on deemed admissions, supplemented the evidence, and offered more comprehensive legal arguments.[28] At the same time, Defendant separately filed objections to the evidence Plaintiff had submitted with her response.[29]

Thirty-four days later, nearly two weeks after Plaintiff's response to Defendant's supplemental motion was due, Plaintiff filed an opposed motion for leave to file late responses to Defendant's supplemental motion and to Defendant's objections to Plaintiff's evidence. As causes for the untimeliness, Plaintiff cited counsel's health issues, other deadlines, and staffing problems.[30] Therewith, Plaintiff filed responses to the two motions.[31] A day later, Plaintiff filed exhibits she had omitted

---

[26]   See Doc. 32, Min. Entry Ord. Dated Nov. 5, 2018.

[27]   See Doc. 33, Def.'s Unopposed Mot. for Leave to File a Suppl. Mot. for Summ. J.; Doc. 34, Ord. Dated Nov. 9, 2018.

[28]   See Doc. 40, Def.'s Suppl. Mot. for Summ. J.

[29]   See Doc. 39, Def.'s Objs. to Pl.'s Evid. in Resp. to Def.'s Mot. for Summ. J.

[30]   See Doc. 46, Pl.'s Opposed Mot. for Leave to File Late Resps.

[31]   See Doc. 46-2, Ex. 2 to Pl.'s Opposed Mot. for Leave to File Late Resps., Pl.'s Resp. to Def.'s Objs. to Pl.'s Evid. in Resp. to Def.'s Mot. for Summ. J. (re-entered at Doc. 53); Doc. 46-3, Ex. 3 to Pl.'s Opposed Mot. for

from her motion for leave to file late responses, which included a revised English-language translation of Plaintiff's declaration, the Spanish-language version of that declaration, and the translator's declaration.[32]

In opposition to Plaintiff's motion for leave, Defendant pointed out that multiple other attorneys were listed as co-counsel and/or had appeared before the court on Plaintiff's behalf.[33] Defendant asserted that Plaintiff had consistently failed to pursue this action with due diligence and, in her motion for leave, failed to demonstrate excusable neglect.[34]  Over Defendant's opposition, the court granted Plaintiff's motion for leave to file the late responses.[35]  On April 16, 2019, Defendant filed a reply in support of its objections to Plaintiff's evidence, a reply in support of its motion and supplemental motion for summary judgment, and objections to Plaintiff's additional exhibits.[36]

At this point, the briefing is complete on Defendant's motions

---

Leave to File Late Resps., Pl.'s Opposed Late Resp. to Def.'s Suppl. Mot. for Summ. J. (re-entered at Doc. 54).

[32]      See Doc. 47, Not. of Filing Exs. A-C Omitted from Pl.'s Opposed Late Resps.

[33]      See Doc. 48, Def.'s Resp. to Pl.'s Opposed Mot. for Leave to File Late Resps. pp. 3-4.

[34]      See id. pp. 3-5.

[35]      See Doc. 49, Ord. Dated Mar. 29, 2019.

[36]      See Doc. 50, Def.'s Reply to Pl.'s Resp. to Def.'s Objs. to Pl.'s Evid. in Resp. to Def.'s Mot. for Summ. J.; Doc. 51, Def.'s Objs. to Pl.'s Not. of Filing Exs. A-C Omitted from Pl.'s Opposed Late Resps.; Doc. 52, Def.'s Reply to Pl.'s Opposed Late Resps. to Def.'s Mot. for Summ. J. & Suppl. Mot. for Summ. J.

for summary judgment and its objections to Plaintiff's evidence. The court now addresses all of the pending matters.

## B.  **Factual Background**

The factual account here includes only the facts that inform the court's decision on summary judgment and that are derived from competent summary judgment evidence.  As explained herein, the key factual issue is whether Defendant had knowledge of J.G.'s allegations of peer harassment.

J.G. enrolled at Ben Milam Elementary School on January 12, 2016.[37]  On that day, an Admission, Review, and Dismissal ("ARD") meeting was held to determine an appropriate placement for J.G. as a student eligible for special education services for a speech impairment.[38]  The ARD committee held meetings to review J.G.'s "educational performance, placement, services, goals, and accommodations" on February 24, 2016, and to review a request for exemption from physical education on April 13, 2016.[39]

At none of the ARD meetings did Plaintiff make a report of J.G.'s experiencing any peer-on-peer harassment.[40]  In fact, the only complaint related to J.G.'s treatment at school that was

---

[37]    See Doc. 41-2, Ex. C-2 to Def.'s Suppl. Mot. for Summ. J., School Recs. (Sealed) pp. 1, 5.

[38]    See Doc. 41-6, Ex. D to Def.'s Suppl. Mot. for Summ. J., Aff. of Jenniffer Pope (Sealed) pp. 3, 4.

[39]    Id. p. 4; see also p. 5.

[40]    See id. p. 3.

voiced by Plaintiff at any ARD meeting was that J.G. "did not want to go to school because a teacher 'was bad.'"[41]   Although Plaintiff did not know which of his teachers "was bad" or the action that prompted J.G.'s statement, Plaintiff did recall her daughter saying that she had seen J.G. sitting next to the music teacher in class on one occasion.[42]   The ARD committee discussed the possibility that J.G.'s placement next to the teacher may have been a countermeasure against his inattentiveness.[43]

Shortly after J.G. began attending Ben Milam Elementary, Plaintiff and Guadalupe complained to the assistant principal that J.G. did not want to attend school because his teacher placed him in time out.[44]   Later in January, J.G. visited the nurse to examine his leg where, he reported, another child had hit him with a stick.[45]   Throughout the spring semester, J.G. was absent numerous schooldays, enough days to prompt the school to issue an Attendance Warning Letter.[46]

---

[41]     Id. p. 5.

[42]     See id.

[43]     See Doc. 41-6, Ex. D to Def.'s Suppl. Mot. for Summ. J., Aff. of Jenniffer Pope (Sealed) p. 5.

[44]     See Doc. 41-7, Ex. E to Def.'s Suppl. Mot. for Summ. J., Aff. of Tricia Olivarez (Sealed) p. 2.   The teacher denied utilizing time out on any student.   See id.

[45]     See Doc. 41-8, Ex. F to Def.'s Suppl. Mot. for Summ. J., Aff. of Olga Valdez (Sealed) p. 2.

[46]     See Doc. 41-2, Ex. C-2 to Def.'s Suppl. Mot. for Summ. J., Attendance Report (Sealed); Doc. 41-2, Ex. C-2 to Def.'s Suppl. Mot. for Summ. J., Attendance Report (Sealed), Undated Letter from Jenniffer Pope to Pl.

On several occasions, Plaintiff communicated with the school about accommodations for J.G., such as requesting that he be allowed to stay indoors during recess due to the heat and that he be allowed to use the restroom in the nurse's office due to potty-training issues.[47]  During these contacts, Plaintiff did not raise allegations of peer-on-peer harassment.[48]  The school nurse, who had multiple contacts with J.G. and at least one contact each with J.G.'s sister and Guadalupe also testified that none of them ever raised allegations of inappropriate conduct by anyone at the school.[49]

Jennifer Bhavsar, M.D., ("Dr. Bhavsar") saw J.G. on March 16, 2016, to address stomach issues and noted that J.G. did "not like to go to the restroom at school [and would] hold his [bowel movements] until he [got] home."[50]  The doctor further noted that J.G. did not like to be in a room with the door shut, especially the restroom.[51]  Plaintiff reported a concern that J.G. was hallucinating, including "voices at school that [we]re talking

---

[47]    See id. pp. 2-3; Doc. 41-10, Ex. H to Def.'s Suppl. Mot. for Summ. J., Aff. of Carmen Hutcherson (Sealed).

[48]    See, e.g., Doc. 41-8, Ex. F to Def.'s Suppl. Mot. for Summ. J., Aff. of Olga Valdez (Sealed) p. 3; Doc. 41-10, Ex. H to Def.'s Suppl. Mot. for Summ. J., Aff. of Carmen Hutcherson (Sealed) pp. 2, 3.

[49]    See Doc. 41-8, Ex. F to Def.'s Suppl. Mot. for Summ. J., Aff. of Olga Valdez (Sealed) p. 5.

[50]    Doc. 44-1, Ex. P to Def.'s Suppl. Mot. for Summ. J., Treatment Note Dated Mar. 16, 2016 (Sealed).

[51]    See id.

about him" and feeling "like something [was] touching him" when nothing was there.[52]   The doctor provided a note for the school excusing J.G. from physical education and requesting that J.G. be allowed to use the nurse's restroom because J.G. did not like to close the door.[53]

On March 29, 2016, Plaintiff contacted Defendant's executive director of human resources and administration and spoke with the administrative assistant.[54]   Plaintiff requested a transfer for both of her children and expressed concern that J.G. had not been allowed to go to the nurse's restroom and that J.G. had received a truancy letter even though he had been absent for doctor and therapy appointments.[55]   Plaintiff also report that "J.G. had been crying and did not want to go to school and she believed something may have happened to him," but provided no details as to what she believed may have happened to J.G.[56]

The administrative assistant explained that the deadline for applying for transfers had passed and provided information on late

---

[52]     Id.

[53]     See Doc. 19-5, Ex. A-4 to Def.'s Mot. for Summ. J., Letter to "whom it may concern" from Dr. Bhavsar; Doc. 41-8, Ex. F to Def.'s Suppl. Mot. for Summ. J., Aff. of Olga Valdez (Sealed) p. 3; Doc. 41-9, Ex. G to Def.'s Suppl. Mot. for Summ. J., Aff. of Hugo Ibarra (Sealed) p. 2.

[54]     See Doc. 41-10, Ex. H to Def.'s Suppl. Mot. for Summ. J., Aff. of Carmen Hutcherson (Sealed) p. 2.

[55]     See id.

[56]     Id.

11

student transfer applications.[57]  She also emailed the principal of
Ben Milam Elementary to forward Plaintiff's concerns.[58]  On March
30, 2016, the principal spoke with Plaintiff and scheduled a
meeting the following day.[59]  Plaintiff did not report that J.G. had
been the victim of inappropriate contact by a peer.[60]

On April 6, 2016, J.G. visited the nurse and requested that
Plaintiff be called to bring him a diaper.[61]  During the call,
Plaintiff asked the nurse about withdrawing J.G. from school for
the year, but offered no specific reason for wanting to do so.[62]
During the next few days, J.G. returned to the nurse's office three
times with minor complaints.[63]

On April 20, 2016, Dr. Bhavsar made the following notation in
a treatment note:

> About two months ago, mom noticed that the patient's
> underwear was torn.  She has noticed on multiple
> occasions, he comes home, goes straight to his room, and
> changes his underwear.  Mom thinks that there has been 4-
> 6 underwear that have been torn.  The most recent was on

---

[57]    See id.

[58]    Doc. 41-2, Ex. C-2 to Def.'s Suppl. Mot. for Summ. J., Email from
Carmen Hutcherson to Hugo Ibarra Dated Mar. 29, 2016.

[59]    See Doc. 41-2, Ex. C-2 to Def.'s Suppl. Mot. for Summ. J., Email from
Hugo Ibarra to Crystal Goodman Dated Mar. 30, 2016 (Sealed).

[60]    Cf. Doc. 41-9, Ex. G to Def.'s Suppl. Mot. for Summ. J., Aff. of Hugo
Ibarra (Sealed) pp. 3, 5 (stating that the first he heard about possible
inappropriate conduct was on April 28, 2019, from the CPS investigator).

[61]    See Doc. 41-8, Ex. F to Def.'s Suppl. Mot. for Summ. J., Aff. of Olga
Valdez (Sealed) p. 4.

[62]    See id.

[63]    See id. p. 5.

> 4/19.  Mom noticed some streaking on the backside of the
> underwear.  She was concerned that there was blood; she
> brought in the underwear today.  One day, the patient
> used his finger and poked the family cat in the anus.
> Dad saw him and started to ask him questions on why he
> was doing that.  Per dad, the [patient] stated that "a
> big boy" touched him.  He said he was touched in the
> front (motioning to his private area) and "in the booty."
> He said that it was "a white boy."  He mentioned the name
> ?Caleb [sic].  He said the boy is not as big as his
> father but as big as his older sister (who is 11).  He
> has talked more with his older sister about this
> situation.  (Only the parents and interpreter w[]ere in
> the room.)  There was one day that mom noticed that the
> patient's rectal area was irritated.  Patient states that
> the last time this boy touched him was yesterday.[64]

The doctor suspected sexual child abuse and indicated that she would report it to Child Protective Services ("CPS").[65]  The doctor referred J.G. for further evaluation and gave Plaintiff an excuse to miss school until the evaluation.[66]  The doctor concluded: "The father did not want to notify the school at this time.  Agreed with father since the case needs further evaluation first."[67]

On April 26, 2016, Plaintiff reported to a speech therapist that J.G. had reported that a big boy had touched him in the bathroom at school and, on that very afternoon, Plaintiff had taken J.G. to the doctor, who committed to filing a report with CPS.[68]

---

[64]    Doc. 44-1, Ex. P to Def.'s Suppl. Mot. for Summ. J., Treatment Note Dated Apr. 20, 2016 (Sealed).

[65]    See id.

[66]    See id.

[67]    Id.

[68]    See Doc. 42, Ex. M to Def.'s Suppl. Mot. for Summ. J., Treatment Note Dated Apr. 26, 2016 (Sealed).

On April 28, 2016, one day before J.G. returned to school, a CPS began an investigation at Ben Milam Elementary.[69]   The investigator informed the principal that J.G. reported that he had been touched inappropriately by another student in the school bathroom.[70]   The principal notified his supervisor, Defendant's executive director of human resources and administration.[71] Ultimately, CPS could not identify the alleged perpetrator.[72]   In an interview by the Bryan Police Department, Plaintiff stated that the sexual contact occurred in February 2016.[73]

Also on April 28, 2016, Plaintiff telephoned the office of the executive director of human resources and administration to request a school transfer and spoke with the administrative assistant.[74] Plaintiff, for the first time, mentioned her concerns about inappropriate sexual contact.[75]   On the day following Plaintiff's

---

[69]   See Doc. 41-9, Ex. G to Def.'s Suppl. Mot. for Summ. J., Aff. of Hugo Ibarra (Sealed) p. 3.

[70]   See id.

[71]   See id. p. 4.

[72]   See Doc. 19-4, Ex. A-3 to Def.'s Mot. for Summ. J., CPS Intake Report p. 5.  An investigation by the Bryan Police Department was also closed, in part because J.G. did not make an outcry during a forensic interview.  See Doc. 19-4, Ex. A-3 to Def.'s Suppl. Mot. for Summ. J., Case Summ. p. 3.

[73]   See Doc. 19-4, Ex. A-3 to Def.'s Suppl. Mot. for Summ. J., Case Summ. p. 2.

[74]   See Doc. 19-6, Ex. B to Def.'s Mot. for Summ. J., Aff. of Crystal Goodman pp. 4-5; Doc. 41-10, Ex. H to Def.'s Suppl. Mot. for Summ. J., Aff. of Carmen Hutcherson (Sealed) p. 3.

[75]   Doc. 41-10, Ex. H to Def.'s Suppl. Mot. for Summ. J., Aff. of Carmen Hutcherson (Sealed) p. 3.

request to transfer schools, Defendant granted the request effective the next school day.[76]

## II.  Defendant's Objections to Plaintiff's Evidence

A party must support its factual positions on summary judgment by citing to particular evidence in the record.  Fed. R. Civ. P. 56(c)(1).  Federal Rule of Civil Procedure 56(c)(2) allows a movant to object to exhibits that "cannot be presented in a form that would be admissible in evidence" under the Federal Rules of Evidence.  Only relevant evidence is admissible.  Fed. R. Evid. 402.  Relevant evidence has a "tendency to make a fact more or less probable than it would be without the evidence" and relates to a fact "of consequence in determining the action."  Fed. R. Evid. 401.

Affidavits or declarations supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  For a declaration to have the same force and effect of an affidavit, it must be signed and dated and contain a statement "in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct."  28 U.S.C. § 1746.  Conclusory allegations,

---

[76]    Doc. 19-6, Ex. B to Def.'s Mot. for Summ. J., Aff. of Crystal Goodman p. 5.

unsubstantiated assertions, improbable inferences, and speculation are not competent evidence.  Roach v. Allstate Indem. Co., 476 F. App'x 778, 780 (5ᵗʰ Cir. 2012)(unpublished)(citing S.E.C. v. Recile, 10 F.3d 1093, 1097 (5ᵗʰ Cir. 1993)).

Defendant challenges the materials Plaintiff submitted in support of her response to Defendant's summary judgment motion. Defendant objects to Plaintiff's appendix of regulations, guidelines, and policies.[77]  Defendant argues that these documents "are not relevant to a determination of liability" because a school district's failure to comply with regulations or to follow governmental guidelines or the district's own policies is not evidence of deliberate indifference and because the documents "will only serve to confuse the legal issues."[78]  Defendant contends that one of the policies submitted is further irrelevant because it was issued more than a year after J.G.'s alleged harassment.

The regulations and guidelines are not summary judgment evidence but, rather, legal authority.  Defendant's objections to

---

[77]    The appendix includes the following documents: (1) U.S. Dep't of Educ. Off. for Civ. Rights, Sexual Harassment Guidance:  Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12034 (March 13, 1997); (2) Off. for Civ. Rights Off. of Special Educ. & Rehabilitative Servs., Dear Colleague Letter, 111 LRP 45106 (July 25, 2000); (3) Tex. Assoc. of Sch. Bds. Legal Servs., Harassment and Bullying Policies in Public Schools (2012); (4) Off. for Civ. Rights, Dear Colleague Letter, 114 LRP 45954 (Oct. 21, 2014); (5) Bryan Indep. Sch. Dist., Student Welfare, Freedom from Discrimination, Harassment, and Retaliation (Feb. 23, 2016); (6) Bryan Indep. Sch. Dist., Student Welfare, Freedom from Bullying (Oct. 18, 2017).  See Doc. 31-2, Attach. 1 to Pl.'s Opposed Late Resp. to Def.'s Mot. for Summ. J., App'x.

[78]    Doc. 39, Def.'s Objs. to Pl.'s Evid. in Resp. to Def.'s Mot. for Summ. J. p. 3; see also id. p. 2.

those documents are **OVERRULED**.  The two policies are evidence. Even though one of the policies postdates the alleged harassment, both policies meet relevance requirements in that they show that Defendant had one of the policies in force during the relevant period and that it issued the other policy after the relevant period.  Whether Defendant violated those policies and whether any violation amounted to deliberate indifference is not an evidentiary issue but a legal one.  The court **OVERRULES** Defendant's objections to the submission of the policies.

Defendant further objects to Plaintiff's declaration and Guadalupe's declaration:[79] (1) as not compliant with 28 U.S.C. § 1746 because they did not state they were made under penalty of perjury; and (2) as not authenticated by a translator.  In response to Defendant's objections, Plaintiff, who does not speak English, submitted the revised version of her English-language declaration in which she declared, under penalty of perjury, that the declaration was true and correct, thus satisfying 28 U.S.C. § 1746.[80]

Plaintiff, in response to Defendant's objections, also provided a declaration from the individual who translated

---

[79]    Defendant also objects to the entirety of the content of Guadalupe's declaration and to the majority of Plaintiff's declaration, pointing to portions Defendant asserts are hearsay and/or are speculative, conclusory, vague, and/or not based on personal knowledge, among other challenges.  The court does not reach those objections.

[80]    See Doc. 47-1, Ex. A to Pl.'s Opposed Mot. for Leave of Ct. to File Late Resps., Decl. of Pl.

17

Plaintiff's Spanish-language declaration into English.[81]   The translator, who identified herself as a legal assistant with The Carlson Law Firm, stated that she was a native speaker of Spanish and English with native proficiency in all aspects of both languages, that she was competent to translate the declaration, and that her translation was true and accurate to the best of her abilities.[82]   Defendant contends the translator's declaration does not properly authenticate Plaintiff's declaration, citing Cruz v. Aramark Servs., Inc., 213 F. App'x 329, 333-34 (5th Cir. 2007)(unpublished).

In Cruz, the Fifth Circuit applied the following four factors in determining whether to accept a translator as a mere conduit: "(1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated." Id. at 334. There, the court found that the plaintiff's attorney, who had served as the translator, should not be accepted as a mere conduit because "he had a potential motive to distort the translation in his clients' favor" and "the court ha[d] no indication of his skill as a translator, other than his own self-supporting claims." Id.

---

[81]   See Doc. 47-3, Ex. C to Pl.'s Opposed Mot. for Leave of Ct. to File Late Resps., Decl. of Gabriela Velazquez.

[82]   See id.

In this case, the problems are the same as those that troubled the Fifth Circuit in <u>Cruz</u>.  The translator here is employed by the law firm of one of Plaintiff's attorneys and shares the same motive as the attorney in <u>Cruz</u> to distort the translation to assist Plaintiff.  Additionally, the translator's attestation to "native proficiency" gives scant indication of her skill as a translator of legal documents.  The translator should not be accepted as a mere language conduit for Plaintiff's declaration.

Plaintiff did not respond to these arguments or request an opportunity to provide an acceptable translator for Plaintiff's declaration.  Because Plaintiff has already had one opportunity to rehabilitate her summary judgment evidence as to this deficiency, the court finds no justification for allowing another.

Accordingly, Defendant's objection to Plaintiff's declaration is therefore **SUSTAINED**, and Plaintiff's declaration is **STRICKEN**.

Plaintiff did not file a revised version of Guadalupe's declaration and did not respond to Defendant's objections to Guadalupe's declaration.  The court interprets these actions to indicate Plaintiff's intent to withdraw Guadalupe's declaration.  Regardless, his declaration does not comply with 28 U.S.C. § 1746's requirement that it be made under penalty of perjury.

Defendant's objection to the declaration on this issue is therefore **SUSTAINED**, and Guadalupe's declaration is **STRICKEN**.

### III.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 504 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. See id. at 505 (quoting Celotex Corp., 477 U.S. at 323). If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute. See id. (citing Kee v. City of Rowlett, Tex., 247 F.3d 206, 210 (5th Cir. 2001)). The court must accept all of the nonmovant's evidence as true and draw all justifiable inferences in her favor. Id. (quoting Anderson, 477 U.S. at 255).

However, if the evidence taken as a whole could not lead a reasonable jury to decide the dispute in favor of the nonmovant, "there is no genuine issue for trial." Scott v. Harris, 550 U.S.

20

372, 380 (2007)(quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)); <u>see also</u> <u>Coastal Agricultural Supply, Inc.</u>, 759 F.3d at 504.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  <u>Scott</u>, 550 U.S. at 380.

### IV. Analysis

Defendant moves for summary judgment on all of Plaintiff's claims.  Plaintiff alleged claims pursuant to Title IX, the ADA, and Section 504 all based on Defendant's actions in relation to the alleged peer-on-peer harassment.  Plaintiff alleged that Defendant deprived J.G. of educational opportunities in violation of Title IX, refused to provide J.G. with a non-hostile educational environment in violation of the ADA, and refused to provide J.G. with a non-hostile education environment in violation of Section 504, all based on the allegations that J.G. was sexually harassed by his older peers.  Plaintiff also alleged an ADA claim of intentional disability discrimination based on Defendant's refusal to reasonably accommodate J.G.'s disabilities by failing to provide him with, inter alia, psychological services and social skills training.

### A.  <u>Peer-on-Peer Harassment</u>

Title IX protects individuals from exclusion in participation,

21

denial of benefits, and discrimination by any education program that receives federal funds.  20 U.S.C. § 1681(a).  A school district may be liable for peer-on-peer harassment if:

> (1) [the district] had actual knowledge of the harassment[;] (2) the harasser was under the district's control[;] (3) the harassment was based on the victim's sex[;] (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit[;] and (5) the district was deliberately indifferent to the harassment.

I.F. v. Lewisville Indep. Sch. Dist., 915 F.3d 360, 368 (5th Cir. 2019)(internal alteration marks omitted)(quoting Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist., 647 F.3d 156, 165 (5th Cir. 2011)).

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Similarly, Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  The elements of proof are the same for claims of peer-on-peer harassment brought pursuant to either the ADA or Section 504:

> (1) [the victim] was an individual with a disability[;];

> (2) he was harassed based on his disability[;] (3) the
> harassment was sufficiently severe or pervasive that it
> altered the condition of his education and created an
> abusive educational environment[;] (4) [the] defendant
> knew about the harassment[;] and (5) [the] defendant was
> deliberately indifferent to the harassment.

Doe v. Columbia-Brazoria Indep. Sch. Dist., 855 F.3d 681, 690 (5th

Cir. 2017)(quoting Estate of Lance v. Lewisville Indep. Sch. Dist.,

743 F.3d 982, 996 (5th Cir. 2014)).

Among the multiple bases on which Defendant argued in favor of
summary judgment was that Defendant did not have knowledge of the
allegations of the peer-on-peer harassment.  Defendant carried its
burden on summary judgment by pointing to many pieces of evidence,
including affidavits of school personnel with whom Plaintiff and
J.G. interacted, ARD meeting notes, and medical treatment notes,
that consistently demonstrate that neither Plaintiff nor anyone
else reported peer-on-peer harassment to Defendant prior to the CPS
investigation on April 28, 2016.  This evidence unequivocally shows
that, prior to that date, Defendant did not have knowledge of facts
that would give rise to a concern that someone was harassing J.G.,
much less knowledge of the alleged peer-on-peer harassment against
J.G.

Plaintiff attempted to meet her burden of producing evidence
to establish a genuine fact issue as to Defendant's knowledge of
harassment with the declarations of Plaintiff and Guadalupe, both
of which have been stricken from the record.  Even if Plaintiff's
declaration was deemed to be competent evidence, Plaintiff's claims

23

based on peer-on-peer harassment would not survive summary judgment.

Plaintiff's declaration stated that she consulted the school principal and assistant principal multiple times in February regarding J.G.'s "behavioral changes in refusing to use the restroom with the door closed, reluctance to attend school and for his safety [sic]."[83]   She asserted that she told the school principal these things at least three times, adding that she also mentioned that J.G. had a "red irritated bottom, . . . apparent back pain, and bite marks in his underwear."[84]   Plaintiff also stated in her declaration that she told the assistant principal that an "older boy call[ed] J.G. a little rat, smack[ed] him on the head, touch[ed] his private areas, and touch[ed] his face, rear, and mouth."   She further claimed that she gave similar information to the principal as well.[85]   Her declaration did not provide dates of these reports but suggested that they occurred before the April 2016 appointment with Dr. Bhavsar.[86]   In fact, Plaintiff stated in her declaration that, at the April 2016 appointment, she informed Dr. Bhavsar of these reports to the school.[87]

---

[83]    Doc. 47-1, Ex. A to Pl.'s Opposed Mot. for Leave of Ct. to File Late Resps., Decl. of Pl. p. 2.

[84]    Id. p. 4.

[85]    Id. p. 5.

[86]    See id. pp. 5, 6.

[87]    See id. p. 6.

24

However, Plaintiff's assertions are blatantly contradicted by the evidence as a whole.  The notes from the ARD meetings on January 12, 2016, February 24, 2016, and April 13, 2016, as well as the affidavit of an ARD committee member, indicate that Plaintiff made no report of the alleged peer-on-peer harassment or even provided any information about the redness and irritation, the marks on J.G.'s underwear, or anything else that would suggest the possibility of harassment.  Outside of the ARD meetings multiple other contacts between Plaintiff and employees of Defendant are documented, but the topics discussed ranged from J.G.'s reluctance to attend school to his inability to tolerate heat during recess to his potty-training difficulties to his frequent absences due to doctor and therapy appointments.  None of which raised a red flag of harassment.  In contacts with the nurse, Guadalupe, J.G., and J.G's sister also failed to mention peer-on-peer harassment or anything that would suggest that it was occurring.  Later, Plaintiff told an employee of Defendant's that J.G. had been crying and that she thought something may have happened to him but provided no other details.

According to Dr. Bhavsar's notes, Plaintiff did not report peer-on-peer harassment during the March appointment, at which the doctor addressed stomach issues.  Other documents in evidence, when taken together, show that J.G. did not make an outcry of peer-on-peer harassment to his parents until April 20, 2016.  His parents

took J.G. to see Dr. Bhavsar that afternoon and shared with her what J.G. had said earlier in the day.  The doctor and Guadalupe agreed to not yet inform the school of the possible harassment, and Plaintiff's silence on that issue at the appointment strongly suggests that she had not already notified the school.  The time line is corroborated by another provider whom Plaintiff told.

J.G. did not return to school on Dr. Bhavsar's written excuse until April 29, 2016, the day after CPS began its investigation. On the same day that the CPS investigation began, Plaintiff contacted school administration to request a transfer for the second time.  It was on that call that Plaintiff first revealed the alleged peer-on-peer harassment.  Defendant transferred both of Plaintiff's children the following day.

Even if the vague time line suggested by Plaintiff's stricken declaration were considered by the fact finder, it would be overwhelmingly contracted by the other evidence in the record.  No rational jury, in light of all of the evidence, would find for Plaintiff on the dispute as to whether Defendant had knowledge of the peer-on-peer harassment prior to April 28, 2019.  Defendant's motion for summary judgment should be granted as to all of the claims based on a theory of peer-on-peer harassment without need to consider Defendant's other arguments.

B.  **Failure to Accommodate**

A claim of intentional disability discrimination for failure

26

to accommodate requires evidence showing: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." <u>Doe</u>, 855 F.3d at 690 (quoting <u>Hale v. King</u>, 642 F.3d 492, 499 (5th Cir. 2011)).  Plaintiff must point to evidence of Defendant's refusal to provide reasonable accommodations for J.G. to receive full benefits of his school's program.  <u>Id.</u>  (citing <u>D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.</u>, 629 F.3d 450, 454 (5th Cir. 2010)).

Plaintiff failed to clearly articulate this claim, much less produce any evidence in support of the elements. In her complaint and in her response to Defendant supplement motion, Plaintiff stated that Defendant failed to provide J.G. with psychological and other services.  In her response she referenced a district policy "not[ing] that the school could provide support counseling, continuing interventions to prevent re-occurrences of the harassment/bullying and referrals to the community mental health or other community programs but never did."[88]

Defendant interpreted Plaintiff's claim to address the period following the CPS report of inappropriate contact against J.G.

---

[88]    Doc. 46-3, Ex. 3 to Pl.'s Opposed Mot. for Leave to File Late Resps., Pl.'s Opposed Late Resp. to Def.'s Suppl. Mot. for Summ. J. (re-entered at Doc. 54) p. 6.

Defendant offered two arguments in favor of summary judgment: (1) that Plaintiff could not produce any evidence that Defendant intentionally discriminated against J.G.; (2) that Plaintiff and Defendant settled a prior claim covering the same allegations that Plaintiff brought pursuant to the Individuals with Disabilities in Education Act ("IDEA").

Plaintiff's entire response to Defendant's arguments of no-evidence and IDEA settlement was as follows:

A.   J.G.'s Discrimination Based Upon Disability Claim is Viable

24.   As the [c]ourt knows[,] the jurisprudence as to the ADA is applicable to Section 504 jurisprudence, Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000), save for causation. Section 504 requi[r]es the discrimination be *solely* to disability. Estate of Lance v. Lewisville Indep. Sch. Dist., 743 F.3d 982, 1000-14 (5th Cir. 2014). Nevertheless, in Bennett-Nelson v. La. Bd. [o]f Regents, 31 F.3d 448, 454 (5th Cir. 2005)[,] the [c]ourt addressed this *solely* issue stating they (ADA and 504) "could probably never be different" because both impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. Where a defendant fails to meet this affirmative obligation, the cause of that failure is (and whether solely or not solely) irrelevant.[] While it was noted in an employment related case, the following wise commentary in McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1074 (11th Cir. 1996) is worth considering:

[]A standard that imposes liability only when an employee's disability is the sole basis for the decision necessarily tolerates discrimination against individuals with disabilities so long as the employer's decision was based—if ever so slightly—on at least one other factor. A liability standard that tolerates decisions that would not have been made in the absence of discrimination,

28

but were nonetheless influenced by at least one
other factor, does little to "eliminate"
discrimination; instead it indulges it.

With all this in mind[,] the District's *Motion [f]or
Summary Judgment* on J.G.'s Section 504 claims[] should
likewise be denied.[89]

Plaintiff's response addressed Section 504's causation requirement. But Plaintiff did not plead a Section 504 claim for intentional discrimination in the failure to accommodate. Plaintiff pled only an ADA intentional-discrimination claim. In her response, Plaintiff also failed to address either of Defendant's arguments in support of summary judgment on this ADA claim. Plaintiff did not present or identify any evidence that J.G. was denied services or that the denial was by reason of his disability.

As Plaintiff again failed to meet her burden of producing evidence to show a genuine factual dispute in response to Defendant's assertion that Plaintiff could not demonstrate intentional discrimination, Defendant's motion should be granted. The court does not need to address Defendant's argument that settlement of the prior IDEA precludes this claim.

### V. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Supplemental Motion for Summary Judgment be **GRANTED**.

---

[89]    <u>Id.</u> pp. 7-8.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 12th day of July, 2019.

Nancy K. Johnson
United States Magistrate Judge

30